BERTELSON, Respondent, *v.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**1. Railroads—Personal Injuries on Track—Contributory Negligence—What Constitutes.**

> In an action against a railroad company for causing the death of plaintiff's decedent by crushing him between cars at or near a crossing, it appeared the track on which the accident occurred was used to stand cars on; and that it was not a public crossing, but its use had been acquiesced in by the company, and the cars were usually separated at that point. On this occasion they were two or three feet apart, and, as the decedent approached the opening, a train at the other end of the cars was backing towards it at the rate of two or three miles an hour, and as he got onto the track he was caught, and the injuries inflicted. There was nothing to prevent the approaching train being seen and heard by the decedent, who it appeared was in full possession of his faculties. *Held*, that even though the company's servants were negligent in not observing the opening and decedent's approach, and also in their omission to ring the bell and blow the whistle, still the decedent was guilty of such contributory negligence as would prevent a recovery.

**2. Same—Pleading—Proof—Question for Court.**

> Where gross negligence is not alleged in the complaint, and the proof does not tend to establish it, it is error to submit the matter to the jury.

**3. Same—Trial—Instructions.**

> It is error for the court in its charge to call attention to assumed facts of which there is no proof.

(Argued February 8, 1888; reversed February 24; opinion filed October 2, 1888.)

Appeal from the district court of Turner county; Hon. C. S. PALMER, Judge.

On the subject of gross negligence the court charged the jury as follows:

"Whether or not these defendants were guilty of gross negligence, willful carelessness, or as some of the authorities see fit to describe it, 'reckless management of their train,' is a question of fact for you to determine from the evidence. It is only in case you find they were exercising such a want of care that their acts became willful recklessness, that the plaintiff would be entitled to recover; and in determining this question of the degree of care, or the want of care, or gross negligence and willful carelessness of the defendant's agents, if any such existed, you have a right to take into consideration all of the evidence that has been given upon this point,—whether or not the bell was rung; the evidence as to the rapidity at which that train was being backed down; the grade upon which the train was running; the number of hands that were upon the train, and their position upon the train,—take them all into consideration, and determine, if you can, whether or not under the circumstances the agents of the defendant were guilty of gross negligence."

*J. W. Cary, C. H. Winsor,* (*Burton Hanson,* of counsel,) for appellant.

There was no negligence on the part of the appellant.

The deceased was not in the exercise of proper care, but was guilty of such negligence as will preclude a recovery in this case. *Gunn* v. *Wisconsin & M. Ry. Co.,* 35 N. W. Rep. 281–283; *R. R. Co.* v. *Huston,* 95 U. S. 702; *Holland* v. *R. R. Co.,* 18 Fed. Rep. 247; *Scofield* v. *R. R. Co.,* 114 U. S. 615, 5 Sup. Ct. Rep. 1125.

The court should have directed a verdict for appellant. *Miller* v. *Ry. Co.,* 25 Mich. 274; *O'Donnell* v. *Ry. Co.,* 8 Cen. L. Jou. 414; *Pinchin* v. *Ry. Co.,* 13 N. E. Rep. 677; *Salter* v. *Ry. Co.,*

75 N. Y. 273; *Gorton* v. *Ry. Co.*, 45 N. Y. 660; *Wilds* v. *Ry. Co.*, 24 N. Y. 440; *Schaefert* v. *Ry. Co.*, 62 Ia. 624, 17 N. W. Rep. 893; *Griffin* v. *Ry. Co.*, 68 Ia. 638, 27 N. W. Rep. 792; *Mantel* v. *Ry. Co.*, 33 Minn. 62, 21 N. W. Rep. 853; *Haas* v. *Ry. Co.*, 47 Mich. 402, 11 N. W. Rep. 216; *Adams* v. *Ry. Co.*, 19 Amer. & Eng. R. Cas. 376; *Miller* v. *Ry. Co.*, 25 Mich. 274; *Seefeld* v. *Ry. Co.*, 35 N. W. Rep. 278; *Rogstad* v. *Ry. Co.*, 31 Minn. 208, 17 N. W. Rep. 287; *Grethen* v. *Ry. Co.*, 22 Fed. Rep. 609.

The court erred in submitting to the jury the question whether or not the appellant was guilty of "willful carelessness." It was not alleged in the complaint, nor was it proved or attempted to be proved. *Letcher* v. *Ry. Co.*, 12 Amer. & E. R. Cas. 61; *Eyser* v. *Telegraph Co.*, 91 U. S. 495; *Spaulding* v. *Ry. Co.*, 38 Wis. 593.

*Frank R. Aikens*, for respondent.

The appellant's servants were guilty of gross negligence.

The public had a right to use this foot-path, and the deceased was not a trespasser. *Byrne* v. *N. Y. C. & H. R. R. R.*, 104 N. Y. 362, 10 N. E. Rep. 539; *Barry* v. *N. Y. C. & H. R. R. R.*, 92 N. Y. 298; *Taylor* v. *D. & H. C. Co.*, 4 Cent. Rep. 628; *Delaney* v. *M. & St. P. Ry. Co.*, 33 Wis. 67; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 362, 5 N. E. Rep. 425; *Culhane* v. *N. Y. C. & H. R. R. R. Co.*, 60 N. Y. 137; *Bonnell* v. *D., L. & W. R. R. Co.*, cited in 1 Thomp. Neg. 404; *Ernst* v. *H. R. R. R. Co.*, 39 N. Y. 61; *Gugenheime* v. *L. S. & M. S. R. R. Co.*, (Mich.) 33 N. W. Rep. 161.

Appellant should have known of the opening. Their employes were bound to tell them, (C. C. § 1368,) and, had they had a lookout, they would have discovered deceased in time to have saved his life. The evidence clearly discloses gross negligence of such a character as to imply a disregard of consequences, and, admitting (for sake of argument only) that decedent was not exercising ordinary care, yet plaintiff could recover. *Dukeman* v. *Wabash, St. L. & P. R. R. Co.*, (Mo.) 4 S. W. Rep. 396; *Duffy*

v. *Missouri Pac. R. Co.*, (Mo.) 2 West. Rep. 198; *Donahue* v. *St. L., I. M. & S. R. R. Co.*, 50 Mo. 461; *Burnham* v. *St. L., etc., R. R. Co.*, 56 Mo. 338; *Kelly* v. *Hannibal, etc., R. R. Co.*, 75 Mo. 138; *Balt. & Ohio R. R. Co.* v. *State*, 33 Md. 542; *Terre Haute & I. R. R. Co.* v. *Graham*, 95 Ind. 286; *Cooper* v. *L. S. & M. S. R. R.*, 33 N. W. Rep. 310; *Farley* v. *C., R. I. & P. Ry. Co.*, 9 N. W. Rep. 230; *Johnson* v. *C. & N. W. Ry. Co.*, 49 Wis. 529, 5 N. W. Rep. 886; *Townley* v. *C., M. & St. P. Ry. Co.*, 53 Wis. 626, 11 N. W. Rep. 55; *Denver & R. G. Ry.* v. *Henderson*, 13 Pac. Rep. 910; *Frazer* v. *South & North Ala. R. R. Co.*, 1 So. Rep. 85; *Lafayette & I. R. R. Co.* v. *Adams*, 26 Ind. 76; *Indianapolis, etc., R. R. Co.* v. *McCluer*, Id. 370; *Dukeman* v. *Wabash, S. L. & P. R. R. Co.*, 4 S. W. Rep. 396.

In any phase of the case the court was justified in submitting the question of contributory negligence to the jury.

The doctrine of contributory negligence is one of the most confused departments of jurisprudence. Deering, Negligence, § 12.

Each case depends upon its own peculiar facts and circumstances. *Thompson* v. *Bridgwater*, 7 Pick. 188; *Ernst* v. *Hudson R. R. R. Co.*, 39 N. Y. 61; *Pa. R. R. Co.* v. *Ogier*, 35 Pa. St. 60; *Pa. R. R. Co.* v. *Coon*, 3 Atl. Rep. 234; *Craig* v. *N. Y. & N. H. R. R. Co.*, 118 Mass. 432; *Williams* v. *Grealey*, 112 Mass. 432; *Com.* v. *Met. R. R. Co.*, 107 Mass. 236; *French* v. *Taunton Branch R. R. Co.*, 116 Mass. 539; *Com.* v. *Fitchburg R. R. Co.*, 10 Allen, 191.

When there is any evidence of care or caution on the part of the person injured, or as excusing an apparent want thereof, the question of contributory negligence is for the jury. *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 419, 5 N. E. Rep. 425; *Paine* v. *Grand T. Ry. Co.*, (N. H.) 1 N. E. Rep. 841.

Or where the undisputed facts relied on to establish contributory negligence are such as may lead to different conclusions. *Williams* v. *N. P. R. R. Co.*, (Dak.) 14 N. W. Rep. 99; *Petty* v. *Hannibal & St. J. R. Co.*, (Mo.) 8 West. Rep. 297; *Railroad Co.* v. *Stout*, 17 Wall. 673, 675; *Ewen* v. *C. & N. W. Ry. Co.*, 38 Wis. 613; *Hathaway* v. *East Tenn., etc., R. R.*, 29 Fed. Rep. 489.

The court's charge was correct. The complaint did not allege that the defendant was guilty of gross or willful negligence, nor is this necessary. *Nolton* v. *R. R. Co.*, 16 N. Y. 444.

It is only necessary that there was evidence to sustain the charge in this particular, not that the charge should conform to the complaint. *Beckwith* v. *R. R. Co.*, 64 Barb. 299–309.

Gross negligence means the absence of that care that was requisite under the circumstances. *Milwaukee, etc., R. R. Co.* v. *Arms*, 91 U. S. 404; *New World* v. *King*, 16 How. 469; *Smith* v. *N. Y. C. R. R. Co.*, 24 N. Y. 222; *Perkins* v. *R. R. Co.*, 24 N. Y. 196; *Peoria Bridge Ass'n* v. *Loomis*, 20 Ill. 235.

THOMAS, J.    This was an action in the district court of Turner county to recover damages for alleged wrongful killing of respondent's decedent at Marion Junction, in said county, on the 7th day of October, 1885.

Respondent's decedent was killed by being caught between two freight cars on the transfer track of appellant's railway company at the village of Marion Junction. The station platform at this station is situated between the main line of appellant's railway and the main line of the Running Water branch and a short track connected therewith. This transfer track on which the accident occurred is about 1,100 feet in length, and connects with the main line of appellant's railway east of the station platform, and with the main line of the Running Water branch west of said platform; thus running somewhat parallel with these two lines, and south of the station platform, and about 60 feet distant therefrom.

There are three traveled ways leading from the village of Marion Junction to the station platform: *First,* there is a foot-path which reaches the platform at or near the east end of the station building; *second,* there is a traveled way a little to the west of the foot-path, which reaches the station at or near the west end of said building; *third,* there is another road or street that leads down to the west end of the platform. It is about 700 feet from

the east end of the transfer track to the point where the foot-path crosses it.

It is admitted that the foot-path is not a public street laid out by authority, but the evidence shows that it was generally used by the people of the village in going to and from the station, and such use was acquiesced in by appellant; at least, it was so used with appellant's knowledge, and cars were frequently separated at the point where the path crossed the track, in order that it might be so used.

The transfer track was used to stand cars on, and to transfer them from one division to the other. When the accident occurred there were standing on this transfer track six or seven cars, consisting of stock and box cars, and one caboose. The caboose was easterly of the cars. These cars were separated near the center from 18 inches to 3 feet. As to whether the opening through which respondent's decedent attempted to pass was directly over this path, or 15 or 20 feet east of it, the evidence is conflicting.

This was the situation of affairs when appellant's mixed train of about fourteen freight.cars, a baggage car, and one passenger coach came in from Running Water. This train was on time, and stopped as usual at the station platform, and left standing there the baggage car and passenger coach. The remainder of the train ran down over the east switch of the transfer track, and backed in on the transfer track in the direction of the caboose and cars, and moved at the rate of two or three miles an hour. As the train backed in, a brakeman was standing on the rear car; another on the top of the car near the engine. The rear brakeman passed the signals to the brakeman near the engine, and he in turn passed them to the person in charge of the engine. None of the train-men or employes of appellant knew of the opening between the cars standing on the siding. While this train was being thus backed down upon the track, respondent's decedent, who was on the station platform, started to cross over this transfer track in the direction of the village, and in

doing so attempted to pass between two of these freight cars standing thereon.   Just as he entered the two or three feet opening between the cars, they were thrown together with such violence as to injure the decedent fatally.

There was nothing to obstruct the view of decedent, or to prevent him from seeing or hearing the movement of the train as it backed in and down this track.   He was a man in the possession of all of his faculties, and the day was clear and calm, and as he started from the station platform towards the transfer track he was on the inside of the somewhat of a semicircle formed by the track, and could have seen and, heard the train had he looked and listened.   Others in the same vicinity both saw and heard it.   He was warned just before he entered between the cars by at least two persons, who were but a short distance from him, of the approaching train, in loud tones of voice, and by vigorous gesticulations, which he did not hear, or if he heard he did not heed, but walked along with his head down as if in a study, and stepped between these cars as aforesaid.   None of the trainmen or employes of appellant saw or knew the decedent was attempting to cross the track, but could have seen him before he went between the cars had they looked in that direction.   The train was stopped within one-half a car's length after the alarm was given.   As to whether the bell was ringing or not, the testimony is somewhat conflicting.

The above is substantially a correct statement of the facts as we gather them from the record upon which the district court, after the usual charge, submitted the case to the jury, which resulted in a verdict in favor of respondent for the sum of $5,000, for which sum judgment was rendered by the court.   In due time appellant entered a motion for a new trial based on the bill of exceptions, which was overruled.   The case is here on appeal, and appellant seeks to reverse the judgment because of numerous alleged errors as set forth in the bill of exceptions, most of which relate to the charge of the court.   These voluminous assignments of error, however, when stripped of their verbose drapery, may be substantially and briefly stated as follows:

*First,* the court erred in refusing to direct a verdict for defendant.

*Second,* the court erred in submitting the question of gross negligence on the part of defendant to the jury.

At least these are virtually the only errors pressed upon the attention of this court by counsel in their brief.

The first of these alleged errors, it will be observed, calls directly in question the *raison d'etre* of the judgment itself, and is based on the insistment that the evidence is insufficient to justify the verdict in two particulars: *First,* it fails to show any negligence on behalf of appellant; *second,* the undisputed testimony shows that respondent's decedent contributed to the accident by his own culpable negligence.

It is clear that, if these propositions are true, the motion to direct a verdict for defendant should have been sustained. This would be the case if only the latter were true, unless there is some evidence tending to establish gross negligence on the part of the employes of appellant in refusing to do what was reasonably necessary to prevent the injury after they had discovered the perilous position of the deceased, in which event appellant would be liable notwithstanding the contributory negligence of deceased. We are unable, however, to discover any evidence of this character in the record.

We think there is some evidence tending to show want of ordinary skill and care on the part of appellant's agents in the management and movement of the train along the transfer track in the direction of the foot-path, under existing circumstances. They knew that this path was generally used by the public in going to and from the station, and therefore ordinary care required that they should have been on the lookout in the direction of said crossing in order to have discovered whether or not there was any one attempting to cross it, and they should also have blown the whistle and rung the bell while thus backing in upon this side track. We think the great preponderance of testimony shows that the bell was being rung at the time; but, as

there is somewhat of a conflict in the evidence on this point, we shall treat it as a fact proper for the jury.

This being true, appellant would undoubtedly be liable in damages for the injury unless the deceased contributed to the accident by his own negligence, in which event it is equally clear he cannot recover. *Railway Co.* v. *Houston*, 95 U. S. 702; *Schofield* v. *Railway Co.*, 114 U. S. 615, 5 Sup. Ct. Rep. 1125; *Holland* v. *Railway Co.*, 18 Fed. Rep. 247; *Rogstad* v. *Railroad Co.*, 31 Minn. 208, 17 N. W. Rep. 287.

The question, therefore, for consideration and determination, is whether the undisputed testimony, as disclosed in the record, establishes contributory negligence on the part of the deceased. The evidence, as we view it, shows that deceased was a man in the possession of all his faculties; that he left the station platform, and walked for a distance of 60 feet towards the transfer track, on which stood some 6 or 7 box cars, which were separated at a point near the center from 18 inches to 3 feet, and attempted to pass over the track, and between these cars, and while thus going from the platform to the transfer track there was being backed in upon said track, within full view and hearing of deceased, a freight train, consisting of 14 cars and a locomotive, moving at the rate of about 3 miles an hour in the direction of the cars between which he was to pass.

Notwithstanding these facts, he either deliberately or thoughtlessly continued his walk, and stepped upon this railway track between these narrowly separated cars, just as they were thrown together by the contact of the moving train, and was caught between the bumpers, and fatally injured.

It also appears from undisputed testimony that other persons, perhaps not so favorably situated as he, both saw and heard this train as it rumbled over and along this side track, at least two of whom, who were but a short distance from him, warned him in loud tones of voice, and by vigorous gesticulations, of the approaching train, which he failed to hear or see, or at least failed to heed, but continued his walk, and stepped as it were into the

very jaws of death, looking down at the ground, seemingly oblivious to his dangerous surroundings.

It seems to us a mere statement of the facts and circumstances under which the accident occurred not only shows conclusively that deceased did not exercise due and reasonable care, but that he utterly failed to exercise any care whatever, but either deliberately, recklessly, or thoughtlessly went upon this railroad track, always to be regarded as a place of danger, and especially so under the peculiar circumstances existing at the time of the accident.

The fact that the train-men were negligent in not keeping a proper lookout, and in not ringing the bell, did not relieve the deceased of the duty and the necessity of exercising ordinary caution and care for his own safety. Want of ordinary care on the part of appellant in these particulars was no excuse for negligence on his part. It was his duty to have looked and listened in order to discover and avoid the danger of the approaching train, and not to walk heedlessly or carelessly into this place of possible danger. Had he used his senses he could not have failed to have seen and heard the train in time to have avoided the accident. If he neglected or failed to use them, and walked thoughtlessly upon the track, he was clearly guilty of culpable negligence which contributed to the accident and resultant injury, and he cannot therefore recover. If, using them, he saw the train, and yet attempted to cross the track, in the face of apparent danger, he, not the appellant, must bear the burden consequent upon his mistake and rashness.

It is well settled that a railway track is a place of danger, and a person about to go upon or over the same, whether at a public crossing or elsewhere, is bound to do that which is ordinarily needful to ascertain whether or not it is safe to do so. Otherwise they assume the risk, and, if injured, they will not be heard to complain of others.

These principles of law are so familiar and so well settled that we do not deem it necessary to buttress them with citations of authorities, but will simply refer to the case of *Railway Co.* v.

*Houston,* and *Schofield* v. *Railway Co.*, cited *supra,* wherein this doctrine is very fully and ably discussed and upheld.

This rule, as laid down in these cases, is not only the law of this territory, but of nearly all the states of the Union where courts have had occasion to apply it.    It is by no means a harsh or rigorous rule, but is just and reasonable, imposing no onerous burden or hardship on any one.    Looking and listening are involuntary acts.    We do both with but little or no exertion, and to do so requires the exercise of the least possible care.

This rule is not invoked in favor of diminished liability on the part of railroad companies, but, as suggested by counsel for appellant, it is a wholesome and necessary rule in favor of human life.

The application of this rule to the facts of the case at bar must of necessity result disastrously to respondent's claim, and in the reversal of the judgment of the district court.    There is nothing upon which it can stand, as the evidence conclusively shows that deceased contributed to the accident by his own negligence.

As to gross negligence on behalf of appellant's employes, it is not alleged in the complaint, nor is there any testimony tending to establish it.    Hence the district court erred in submitting it to the jury, and the charge of the court in reference to this question was equally erroneous, as it called the attention of the jury to assumed facts of which there was no proof.

The judgment is reversed.    All the justices concurring, except PALMER, J., dissenting.